## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

PRAXIS CAPITAL, L.P.,             )
                             )
            Plaintiff,     )
                             )
vs.                           )  No. 06-3043-CV-S-FJG
                             )
JEREMY GARDNER, et al.,      )
                             )
            Defendants.  )

## ORDER

Currently pending before the Court is plaintiff's Motion for a Temporary Restraining Order (Doc. # 2).  The Court held a teleconference with the parties on February 24, 2006.  Although the plaintiff filed its Motion for a Temporary Restraining Order, no defendant has of yet filed a response.  However, after hearing from all the parties during the teleconference, the Court hereby issues this ruling.

### I. BACKGROUND

Plaintiff alleges that the defendants have fraudulently converted approximately $1 million in a scheme of false statements, forged documents and illegal actions.  Praxis provided working capital to the defendant Cutting Edge (a metal fabricating company), through a Factoring Agreement.  Plaintiff alleges that initially Gerald ("Jerry") Gardner admitted that many of the contracts which it had provided to Praxis did not exist, the invoices were false and that his son (defendant Jeremy Gardner) had been arrested and charged with fraud.  Jerry Gardner denied any involvement and promised to work with Praxis to restructure the Factoring Agreement.  Praxis entered into a First

1

Amendment to the Factoring Agreement in November 2005. However, plaintiff alleges that Jerry Gardner and Cutting Edge subsequently defaulted under the terms of the Agreement. Praxis also learned that substantial withdrawals had been made of Praxis funds for the personal benefit of the Gardner defendants. Praxis told Jerry Gardner that it no longer had any confidence in his ability to manage the company and introduced him to Doug Thomas, an individual who was experienced in the steel fabrication industry as a potential partner in Cutting Edge. A deal was negotiated and Gardner agreed and executed an Agreement where he transferred seventy percent of his ownership units of Cutting Edge to Thomas. Plaintiff alleges however that Gardner continued to divert funds for his own benefit and to divert significant amount of money away from Praxis. Plaintiff asserts that on January 20 and 21, 2006, a number of defendants removed from Cutting Edge's facilities its equipment, work in progress, materials and supplies and customer contracts and blocked plaintiff's access to the facilities. Plaintiff also asserts that defendants placed a sign on the property claiming that Alford controlled Cutting Edge and threatening prosecution against anyone who removed any property without Alford's consent. Thus, plaintiff states that as of January 23, 2006, the defendants completely prevented Cutting Edge from conducting business and barred Thomas and the employees from entering the premises. Thus, plaintiff states that Cutting Edge is facing immediate collapse because it is unable to fulfill its present contractual obligations.

## II. DISCUSSION

2

## A. Standard for Granting a Temporary Restraining Order

"In determining a litigant's right to preliminary injunctive relief the Court considers four factors: (1) the threat of irreparable injury to the plaintiff; (2) the balance of harm to the plaintiff if relief is not granted and harm to the defendant if an injunction is issued; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." Medtronic, Inc. v. ETEX Corp., No. Civ. 04-1355 ADM/AJB, 2004 WL 768945 (D.Minn. Apr. 12, 2004) citing Dataphase Systems. Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981). This is the same standard that applies when a court considers whether a temporary restraining order should be issued. S.B. McLaughlin & Co. Ltd. v. Tudor Oaks Condominium Project, ABIO, 877 F.2d 707, 708 (8th Cir. 1989).

### 1. Threat of Irreparable Harm

Praxis states that without a temporary restraining order, Cutting Edge will be unable to perform its contracts, it will become insolvent and will be forced to close, leading to the loss of all collateral securing the obligations under the Factoring Agreement owed by Cutting Edge to Praxis. In support of its Motion, Praxis attached the affidavit of Doug Thomas. Mr. Thomas states in his Affidavit that because the facility has temporarily been closed, Cutting Edge is now unable to fulfill its present contractual obligations including completing a contract with Ficon Construction and a contract with Westmoreland Construction at the Cuba School. Additionally, Mr. Thomas states that Cutting Edge has been approached to complete a contract with Southern Trade Fabrication valued at $600,000 and Ficon Construction valued at $1,500,000. Mr. Thomas states that these two contracts would allow Cutting Edge to maintain its

3

operation for more than six months.  He states however that under the present circumstances, the company is unable to complete the existing contracts or to enter into any new contracts. (Affidavit of Doug Thomas, Exh. U).  Praxis states that monetary loss constitutes irreparable harm when a company's very existence is threatened with destruction.  Amigo Gift Association v. Executive Properties Limited, 588 F.Supp. 654, 658 (W.D.Mo. 1984).  The Court finds that this factor weighs in favor of granting the temporary restraining order.

### 2. Likelihood of Success on the Merits

Praxis plead eleven counts in its Complaint.  In the Motion for Temporary Restraining Order, Praxis addresses the merits of Counts I, II, VI, VII, VIII and IX.

### a. Counts I and II - Breach of Contract

Praxis states that the existence of an enforceable contract with both Cutting Edge and Jerry Gardner cannot be disputed.  The initial Factoring Agreement was entered into by the parties in May 2005.  Praxis states that Cutting Edge is in default of many provisions of the Factoring and Security Agreements because it failed to remit payment, submitted false documentation, submitted false contracts, interfered with Praxis' rights in collateral, misappropriated funds due Praxis from assigned accounts and misappropriated funds that served as collateral.  Additionally, Praxis argues that Jerry Gardner entered into an Amendment to the Factoring and Security Agreement wherein he made additional representations and warranties.  Praxis argues that Jerry Gardner has now breached the terms of this Agreement as well and has removed materials, work in progress and equipment from the premises.

4

**b. Interference with Contractual Relations - Counts VI and VII**

Praxis states that its right to protect Cutting Edge's contractual relationships with its customers and employees as well as its rights to its personal property and contractual rights are clear and should be protected. Without an injunction, Praxis argues that Jerry Gardner and the other defendants will remain free to use Cutting Edge's property to perform contracts that rightfully belong to Cutting Edge and that Cutting Edge will lose the financial benefit of these contracts. Praxis argues that Jerry Gardner is continuing to interfere by firing employees loyal to Cutting Edge, hiring other employees to work at the "new" fabrication company, soliciting change orders from Cutting Edge's customers and reducing the amounts owed and moving work to the new company and misappropriating assets and funds belonging to Cutting Edge.

**c. Misappropriation, Theft and Conversion - Counts VIII and IX**

Praxis argues that in this case, there is no dispute that the Gardners knew that the assets were owned by Cutting Edge and pledged to Praxis as security for the working capital advances made to the business. Additionally, Praxis argues that the defendants were forewarned not to interfere with Praxis and Cutting Edge's rights, yet they proceeded to interfere regardless.

After reviewing the arguments presented by plaintiff, the Court finds that plaintiff has shown a high likelihood of success on its claims. Therefore, the Court finds that this factor weighs in favor of granting the temporary restraining order.

**3. Balance of Equities**

5

Praxis has shown that if a TRO is not issued, Cutting Edge will be unable to perform its contracts, will likely become insolvent and be forced to close. As a result Praxis would lose all the collateral which is securing the obligations under the Factoring Agreement. Additionally, Praxis states that it would be virtually impossible to reconstruct the company. Praxis argues that without injunctive relief, it will be unable to mitigate its losses, and will forever lose its ability to recover the funds which it advanced to Cutting Edge. In the telephone conference with the Court the defendants did not assert that they would suffer any harm if a temporary restraining order were issued. Rather, they argued that a dispute exusts as to who owns the facility and the contents. The Court thus finds that the balance of equities lies in favor of granting the motion for a temporary restraining order.

### 4. The Public Interest

Praxis argues that the Temporary Restraining Order in this case is reasonable and narrowly tailored. Praxis states that the Temporary Restraining Order will not adversely affect the public interest. The Court finds that this factor is neutral.

### III. CONCLUSION

After consideration of the above noted factors, the Court finds that issuance of a temporary restraining order in the instant case is warranted. Accordingly, plaintiff's motion for issuance of a temporary restraining order (Doc. # 2) is hereby **GRANTED.**

It is hereby **ORDERED** that:

(1) Defendants Jeremy Gardner, Gerald "Jerry" Gardner, Chris Alford,

6

Harold and Wanda Cook, Cutting Edge Fabrications, LLC (collectively

"Defendants"), their agents, employees and those acting in concert with them are

restrained and enjoined from:

(a) using any personal property or other assets of Cutting Edge;

(b) exercising control and dominion over any of the personal property, including
equipment, tools, work in progress, materials, and supplies, removed from Cutting
Edge's facilities on or about January 20 and 21, 2006 or at any other time, and to
return such personal property in his or her possession or control to Cutting Edge's
facilities and to restore Cutting Edge's access to its facilities;

(c) accepting any funds from any of Cutting Edge's customers pursuant to any contract
or order between defendants' or their new company and Cutting Edge's customers,
or any contract or order purportedly assigned or otherwise transferred by Cutting
Edge to defendants' new company;

(d) retaining any of Cutting Edge's funds, or accepting any funds from any customer of
Cutting Edge, related in any way to any work performed by Cutting Edge or
contracted (or previously contracted) to be performed by Cutting Edge;

(e) prohibiting the Defendants from using any equipment, assets or material removed
from Cutting Edge's leased facility.

(f) dispersing any funds obtained from services performed in competition with Cutting
Edge, either directly, indirectly through any entity owned or controlled by a
defendant.

(g) directing defendants to deliver to Praxis all originals and copies of documents and
other materials taken from Cutting Edge's facilities on or about January 21 and 22,
2006.

(2) Defendants Harold and Wanda Cook are hereby (i) enjoined and
restrained from denying access to the property leased or previously occupied by
Cutting Edge; and (ii) ordered to provide the Plaintiff and Cutting Edge immediate
access thereto so that it may resume its business operation.

(3) Defendants are ordered to show cause why, within ten (10) days and
after hearing, a preliminary injunction should not issue; and

(4) This Temporary Restraining Order begins after entry and the filing of
a bond of $ 750,000, or other appropriate surety.

7

(5) This Temporary Restraining Order shall remain in effect through **March 16, 2006**, and may be extended as necessary upon a showing of good cause.

(6) A Preliminary Injunction hearing is scheduled on **March 16, 2006**, at **8:30 a.m.** 2006.


Date: February 24, 2006                              /S/ **FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                Fernando J. Gaitan Jr.
                                                     United States District Judge

8