# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| PRAXIS CAPITAL, L.P., | ) |
| Plaintiff, | ) |
| vs. | ) No. 06-3043-CV-S-FJG |
| JEREMY GARDNER, et al., | ) |
| Defendants. | ) |

# ORDER

On February 24, 2006, the Court entered a Order granting plaintiff's Motion for a Temporary Restraining Order (Doc. # 12). On March 16, 2006, the Court held a hearing on plaintiff's Motion for Preliminary Injunction. After hearing argument from the parties, the Court hereby rules as follows.

## I. DISCUSSION

**A. Standard for Granting a Temporary Restraining Order**

"In determining a litigant's right to preliminary injunctive relief the Court considers four factors: (1) the threat of irreparable injury to the plaintiff; (2) the balance of harm to the plaintiff if relief is not granted and harm to the defendant if an injunction is issued; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." Medtronic, Inc. v. ETEX Corp., No. Civ. 04-1355 ADM/AJB, 2004 WL 768945 (D.Minn. Apr. 12, 2004) citing Dataphase Systems. Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981).

**1. Threat of Irreparable Harm**

Praxis states that without a preliminary injunction, Cutting Edge will be unable to perform its contracts, it will become insolvent and will be forced to close, leading to the loss of all collateral securing the obligations under the Factoring Agreement owed by Cutting Edge to Praxis. In support of its Motion, Praxis attached the Supplemental Affidavit of Doug Thomas. Mr. Thomas states in his Affidavit that since acquiring ownership of Cutting Edge, Providence Holdings has undertaken several measures to attempt to preserve the business operations of Cutting Edge. Mr. Thomas states that Providence has engaged several individuals with whom they have established relationships in an effort to preserve current contracts and to solicit and secure additional business to be undertaken by Cutting Edge upon the restart of the business operations. He states that Southern Trades of Missouri has verbally agreed to use Cutting Edge for their overflow work and that Westward Construction of Missouri has verbally agreed to give Cutting Edge the opportunity to participate in all of their construction and fabrication projects. Currently they have contracted with Cutting Edge in regards to the new Owensville School which is to bid on March 27, 2006. FICon of Missouri has also verbally committed to helping Cutting Edge establish a firm basis through making Cutting Edge a preferred contractor. Mr. Thomas states that if Cutting Edge is not given the opportunity to restart its business operations and finalize these bids and relationships in the immediate future, all current contracts and potential opportunities will be lost. (Supplemental Affidavit of Doug Thomas). Praxis states that monetary loss constitutes irreparable harm when a company's very existence is threatened with destruction. Amigo Gift Association v. Executive Properties Limited,

588 F.Supp. 654, 658 (W.D.Mo. 1984). The Court finds that this factor weighs in favor of granting a motion for preliminary injunction.

**2. Likelihood of Success on the Merits**

During the hearing, the Court heard argument and had the opportunity to inquire of counsel concerning ownership of Cutting Edge. It is apparent to the Court after reviewing the documents presented and statements made by the parties that Mr. Doug Thomas has a 70% ownership share in Cutting Edge and that Mr. Jerry Gardner retained a 30% ownership share as evidenced by a December 16, 2005 letter signed by Jerry Gardner. Mr. Gardner also admitted during the hearing that he represented to Praxis that he was the sole 100% owner of Cutting Edge when he signed over his shares in December 2005.

Also during the hearing, counsel for Praxis stated that a settlement agreement had been reached with defendants Harold and Wanda Cook. The settlement agreement was premised on the Cooks giving access to the facility to Doug Thomas, but not to either Jerry or Jeremy Gardner. Cutting Edge has agreed to pay rent to the Cooks for January and also a pro-rated amount for March. Cutting Edge and the Cooks also agree to continue under the terms of the current lease agreement. The Cooks agreed not to make claims with regard to the property or the supplies in the facility.

Praxis in its Suggestions in Support of its Motion for Preliminary Injunction notes that the Cooks were the only parties which filed Suggestions disputing Praxis's claim that it had a strong likelihood of success on the merits. Now that Praxis has settled with the Cooks, no other party has suggestions in opposition on file to the Motion for Preliminary Injunction. The Court hereby adopts and incorporates by reference its

3

previous findings regarding the likelihood of Praxis's success on the merits. As noted in the Court's Order ruling on the Motion for Temporary Restraining Order, the Court finds that plaintiff has shown a high likelihood of success on its claims. Therefore, the Court finds that this factor weighs in favor of granting the motion for preliminary injunction.

### 3. Balance of Equities

Praxis has shown that if a preliminary injunction is not issued, Cutting Edge will be unable to obtain any future contracts and will likely become insolvent and be forced to close. As a result Praxis would lose all the collateral which is securing the obligations under the Factoring Agreement. Additionally, Praxis states that it would be virtually impossible to reconstruct the company. Praxis argues that without injunctive relief, it will be unable to mitigate its losses, and will forever lose its ability to recover the funds which it advanced to Cutting Edge. During the hearing on the motion for preliminary inunction, no defendant made a credible argument that they would suffer any harm if a preliminary injunction were issued. They focused their argument on the dispute as to who owns the facility and the contents. The Court has now clarified that issue. Therefore, the Court finds that the balance of equities lies in favor of granting the motion for preliminary injunction.

### 4. The Public Interest

Praxis argues that the Preliminary Injunction in this case is reasonable and narrowly tailored. Praxis states that the Preliminary Injunction will not adversely affect the public interest. The Court finds that this factor is neutral.

4

## II. CONCLUSION

After consideration of the above noted factors, the Court finds that issuance of a Preliminary Injunction in the instant case is warranted. Accordingly, plaintiff's motion for issuance of a Preliminary Injunction (Doc. # 34) is hereby **GRANTED.** The Preliminary Injunction shall remain in force and effect until a trial on the merits can be conducted. The restrictions established by the Court's February 24, 2006 Order granting the Temporary Restraining Order shall remain in full force and effect. The Preliminary Injunction begins after entry and the filing of a bond of $ 200,000, or other appropriate surety.

The Court hereby **DENIES** the Motion to Dismiss filed by Harold and Wanda Cook (Doc. # 6); **DENIES** the Motion to Determine Legal Ownership of Cutting Edge Fabrication filed by Jeremy Gardner (Doc. # 14); **DENIES** the Motion for a Temporary Restraining Order filed by Jeremy Gardner (Doc. # 15); **DENIES** the Motion to Appoint Counsel filed by Gerald Gardner (Doc. # 20); **DENIES** as **MOOT** the Motion for Extension of Time to File An Answer filed by Gerald Gardner (Doc. # 20); **DENIES** the Motion to Suppress Evidence filed by Jeremy Gardner (Doc. # 22); **DENIES** the Motion to Dismiss filed by Cutting Edge Fabrication (Doc. # 23) and **DENIES** the Motion to Determine Ownership of Tools, Equipment and Fixtures filed by Jeremy Gardner (Doc. # 24).

The parties shall submit to the Court a Proposed Scheduling and Trial Order on or before March 31, 2006.

Date: March 16, 2006            /S/ **FERNANDO J. GAITAN, JR.**
Kansas City, Missouri         Fernando J. Gaitan Jr.
                                                  United States District Judge